**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

| | |
|---|---|
| **PHAJEEMAS SARAHONG**<br>4901 E. Kelton Lane<br>Apt. 1270<br>Scottsdale, AZ 85254<br>*Resident of Maricopa County* | <u>Jury Trial Requested</u> |
| and | Collective/Class Action Claim |
| **LUCIE SAETHER**<br>17514 12th Avenue, NE<br>Shoreline, WA 98155<br>*Resident of King County* | Civil Action No.: |
| Plaintiffs, | |
| ***Individually and on Behalf of All<br>Similarly Situated Employees*** | |
| v. | |
| **SMARTLINK, LLC**<br>1997 Annapolis Exchange Parkway<br>Suite 200<br>Annapolis, MD 21401 | |
| Serve: Ryan M. Beard, Esquire<br>     Kagan Law Group, LLC<br>     238 West Street<br>     Annapolis, MD 21401 | |
| Defendant. | |

**<u>COLLECTIVE AND CLASS COMPLAINT FOR WAGES OWED</u>**

PHAJEEMAS SARAHONG and LUCIE SAETHER, Plaintiffs, by and through their

undersigned counsel and The Law Offices of Peter T. Nicholl, on behalf of themselves and all

other similarly situated employees, hereby submit their Complaint against SMARTLINK, LLC,

Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq*. (hereinafter, "MWHL"); unpaid wages, interest, treble damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq*. (hereinafter, "MWPCL"); unpaid wages, interest, double damages, reasonable attorneys' fees and costs under the Washington Minimum Wage Act, Rev. Code Washington ("RCW") §§ 49.46, *et seq*., 49.52, *et seq*. (hereinafter, "WMWA"); and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Smartlink, LLC ("Smartlink" and/or "Defendant") is a national staffing company that provides development, engineering and maintenance services for its clients' infrastructures. Defendant's clients include technology companies such as AT&T, T-Mobile and similar communication providers. To assist with the needs of its clients, Smartlink employed Project Coordinators at its offices in Maryland, Washington, Arizona and California, as well as in remote offices across various states.

Plaintiffs and other similarly situated employees were employed as Project Coordinators. Project Coordinators were primarily responsible for assisting with the needs of a client's project. Their tasks centered on providing basic administrative support for the projects they were assigned. This consisted of maintaining documents, data entry, tracking the fees and costs attributable to their assigned projects, as well as processing and monitoring the equipment orders needed for a project's completion.

Due to the nature of their duties, Plaintiffs and other Project Coordinators consistently worked over forty (40) hours a week. However, Defendant failed to pay Plaintiffs and other Project Coordinators for their overtime hours worked. Defendant classified all of its Project Coordinators as exempt salaried employees not eligible for overtime pay. However, the duties performed by Project Coordinators did not exempt them from the FLSA's overtime requirements and applicable state wage laws. Defendant's unlawful practices resulted in Plaintiffs and other Project Coordinators being denied the wages they rightfully earned.

Defendant is well aware of its unlawful practices. In January 2021, Defendant reclassified its "Project Coordinators" to hourly non-exempt employees entitled to overtime wages. Defendant also changed the title of the position to that of "Program Coordinator." However, the duties attributable to the "Program Coordinator" position remained exactly the same. Plaintiffs, who held both positions, have made clear that there were no differences regarding the tasks they performed as Project Coordinators and Program Coordinators. Defendant simply changed the name of the position to try and mask the fact that Project Coordinators were misclassified. Defendant failed to compensate its Project Coordinators for the unpaid overtime they earned prior to the reclassification. Dozens of Project Coordinators have been harmed by these unlawful conditions.

## THE PARTIES

1.      Plaintiff Phajeemas Sarahong (hereinafter, "Sarahong") is an adult resident of Maricopa County, Arizona

2.      Plaintiff Lucie Saether (hereinafter, "Saether") is an adult resident of King County, Washington.

3.      Defendant Smartlink, LLC (hereinafter, "Defendant") is a national staffing company that provides development and maintenance telecommunication services.

3

4.      Defendant's principal office is in Annapolis, Maryland.

5.      Defendant employed Project Coordinators at its offices in Maryland, Washington, Arizona and California, as well as in remote offices throughout the United States.

6.      Defendant maintains two (2) offices in Maryland, located in Annapolis and Hanover, Maryland.

7.      Plaintiff Sarahong was employed at Defendant's Hanover, Maryland and Scottsdale, Arizona offices.

8.      Plaintiff Saether was employed at Defendant's Kirkland, Washington office.

9.      Due to the nature of its business, Defendant is subject to the FLSA, MWHL, the MWPCL and the WMWA.

10.     Defendant's business meets the definition of a retail or service establishment.

11.     Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

12.     At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce based on the nature of the duties they performed as part of their employment with Defendant.

13.     Plaintiffs worked for Defendant who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b), the MWPCL, § 3-501(b) and RCW § 49.46.010(4).

14.     At all times relevant, Plaintiffs and others similarly situated performed non-exempt work for Defendant. The duties assigned to Plaintiffs and others similarly situated did not satisfy the duties tests contained within the exemptions specified by the FLSA, MWHL, the MWPCL, or the WMWA.

15.     From approximately January 2018 to December 2020, Plaintiff Sarahong was employed by Defendant as a Project Coordinator.

16.     From approximately January 2021 to November 2021, Plaintiff Sarahong was employed by Defendant as a Program Coordinator.

17.     From approximately October 2020 to December 2020, Plaintiff Saether was employed by Defendant as a Project Coordinator.

18.     From approximately January 2021 to January 2022, Plaintiff Saether was employed by Defendant as a Program Coordinator.

19.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set its employees' schedules, including Plaintiffs and other similarly situated employees' schedule.

20.     Defendant possessed and exercised authority to determine the hours worked by Plaintiffs and others similarly situated.

21.     Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiffs and other similarly situated employees.

22.     Defendant had the authority to control Plaintiffs' tasks and the tasks of others similarly situated.

23.     Defendant had and exercised the power to change the course of Plaintiffs and other similarly situated employees' duties.

24.     Plaintiffs and members of the putative classes recognized Defendant's authority and obeyed Defendant's instructions.

25.     Defendant made all decisions regarding Plaintiffs and other similarly situated employees' rates and methods of pay.

## JURISDICTION AND VENUE

26.     Original jurisdiction in this Honorable Court is expressly provided by the FLSA, 29 U.S.C. § 207, *et seq.* This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

27.     Discretionary supplemental jurisdiction of Plaintiffs' state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiffs' federal claims are based.

28.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

29.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; Defendant is a resident of Maryland and the unlawful acts central to this matter occurred within the State of Maryland.

30.     This Honorable Court also has personal jurisdiction over Defendant; Defendant is headquartered and incorporated under the laws of Maryland. Defendant conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

31.     Defendant is a national staffing company that provides development solutions, engineering, maintenance and other telecommunication services for its clients. Defendant's clients include technology companies such as AT&T, T-Mobile and similar communication providers.

32.     To assist with the needs of its clients, Defendant employed Project Coordinators at its offices across the country.

33.     Plaintiffs were employed as Project Coordinators. Plaintiffs and other Project Coordinators' duties centered on providing routine administrative support related to the maintenance, construction and/or modification of the various infrastructures stationed within Defendant's clients' sites.

34.     While employed as a Project Coordinator, Plaintiff Sarahong provided administrative support to Defendant's client AT&T. She worked directly with AT&T's New Build Team. The New Build Team was primarily responsible for facilitating the completion, maintenance and construction of satellites, antennas, transmitters and other infrastructures at various sites along the East Coast.

35.     While employed as a Project Coordinator, Plaintiff Saether provided administrative support to Defendant's client T-Mobile. She worked directly with T-Mobile's Acquisition Projects Team. The Acquisition Projects Team was primarily responsible for assisting with the management of antennas, receivers and other infrastructures that support T-Mobile's data communications. Members of this Team were specifically charged with making modifications to various infrastructures based on T-Mobile's acquisition of Sprint. These infrastructures were located at various sites throughout Seattle, Washington and Portland, Oregon.

36.     Members of Defendant's clients' Teams were primarily responsible for selecting the subcontractors and other personnel needed to build or modify the particular infrastructures and other services needed for a particular site. This includes site maintenance, inspection and design, as well as regulatory services pertaining to site supervision, the procurement of zoning permits and managing the lease. Plaintiffs and other similarly situated Project Coordinators were not involved with selecting the subcontractors who were to perform the construction and other services needed at a particular site.

37.     Once Defendant's clients chose the particular subcontractors needed, Defendant's construction managers and other higher-ranking employees were responsible for creating the plans needed for a project's completion, which includes assigning the necessary roles to both internal and external parties.

38.     Plaintiffs and other Project Coordinators' role was to follow the standard procedures needed for a project's completion. This centered on performing basic administrative tasks.

39.     For instance, Plaintiffs and other Project Coordinators had to compile and collect the routine documents related to the maintenance and construction plans for each project. Making sure that all fees and costs specific to each project were properly recorded constituted one of their primary functions. Processing, tracking and monitoring the equipment orders needed for their assigned projects are other examples of their primary tasks. They were responsible for these tasks from the time they were assigned a particular project until its completion.

40.     While projects were ongoing, Plaintiffs and other similarly situated Project Coordinators had to pull and upload construction plans, weekly progress reports and other routine documents aligned with a project into a client's server.

41.     Once projects were finished, Plaintiffs and other Project Coordinators typically had to prepare and assemble documents associated with a project's completion and wait for said documents to get approved. This process was referred to as finalizing the "close-out package," which centered on having to upload construction/modification drawings, radiation testing and other standard tests governing a site. This process, which included the guidelines that Plaintiffs and other Projects Coordinators had to follow to get their close-out packages approved, was simply a matter of routine.

42.    Once clients approved the close-out packages, Plaintiffs and other similarly situated Project Coordinators were responsible for collecting and preparing the bills specific to the work performed on a project and submitting an invoice to clients. They were also required to perform related data entry tasks pertaining to these bills, which included having to enter information into Defendant's clients' systems for purposes of tracking and confirming all payments received.

43.    Plaintiffs and other similarly situated Project Coordinators utilized the software Systems Applications and Products in Data Processing ("SAP") to enter the payment information and other data related to their assigned projects, which served as a primary tool for completing their day-to-day tasks.

44.    To learn these tasks, Plaintiffs and other Project Coordinators had to all undergo the same uniform training upon being hired. They watched instructional videos, reviewed training documents and shadowed more experienced Project Coordinators for purposes of learning how to perform their duties.

45.    While performing their duties, Plaintiffs and other Project Coordinators did not require any specialized training or advanced knowledge. All of their tasks were basic in nature.

46.    Plaintiffs and other Project Coordinators did not have any decision-making authority.

47.    Plaintiffs and other Project Coordinators did not perform any analysis.

48.    Plaintiffs and other Project Coordinators' duties did not require the use of independent judgement.

49.    Plaintiffs and other Project Coordinators lacked discretion altogether.

50.    Plaintiffs and other Project Coordinators did not have any input regarding the manner in which their tasks were completed.

51.     Plaintiffs and other Project Coordinators did not have any input in regard to Defendant's employment policies or procedures.

52.     Plaintiffs and other Project Coordinators did not have the authority to hire or fire.

53.     Plaintiffs and other Project Coordinators were not responsible for any supervisory duties.

54.     Plaintiffs and other Project Coordinators did not perform any managerial tasks.

55.     Plaintiffs and other Project Coordinators simply had to complete the routine tasks they were given.

56.     Plaintiffs and other Project Coordinators' tasks were all aligned with Defendant's regimented procedures.

57.     Plaintiffs and other Project Coordinators adequately performed their tasks and satisfied the requirements of their position to benefit Defendant.

58.     Plaintiffs and other Project Coordinators were all paid a salary. They received the same bi-weekly payments regardless of the number of hours they worked each week.

59.     From approximately December 2018 until December 2020, Plaintiff Sarahong was employed as a Project Coordinator. During this period, she was classified as an exempt salaried employee not eligible for overtime wages. Her annual salary was approximately $40,000.00. She was paid the same bi-weekly salary regardless of the number of hours she worked each week.

60.     From approximately October 2020 until December 2020, Plaintiff Saether was employed as a Project Coordinator. During this period, she was classified as an exempt salaried employee not eligible for overtime wages. Her annual salary was approximately $52,000.00. She was paid the same bi-weekly salary regardless of the number of hours she worked each week.

61.     Plaintiffs and other Project Coordinators were scheduled to work forty (40) hours each week. Their regularly scheduled hours were supposed to only be from 8:00 a.m. to 5:00 p.m. Monday through Friday, which was to include an hour break for lunch. However, the hours they actually worked far exceeded their assigned schedules.

62.     Although Plaintiffs and other Project Coordinators' tasks were secretarial in nature, there was still a high volume of work they had to complete. They were responsible for a heavy workload during the entire period they held the position of Project Coordinator.

63.     Due to the sheer number of projects they had to handle, Plaintiffs and other Project Coordinators were required to work overtime. The requirement of having to complete all of the tasks related to each project resulted in Project Coordinators having to work at various times throughout the day, including times when they were not scheduled to work. The volume of their assignments left no other choice.

64.     The demands of Plaintiffs and other Project Coordinators' position entailed having to meet multiple deadlines. The strict deadlines imposed by Defendant forced Plaintiffs and other Project Coordinators to work before and after their scheduled shifts.

65.     Understaffing also contributed to Plaintiffs and other Project Coordinators having to work more than their scheduled hours. Defendant failed to provide an adequate number of personnel to meet the demands of its business. This includes not staffing the requisite number of Project Coordinators to meet its clients' needs. This had the effect of increasing Plaintiffs and other Project Coordinators already heavy workload.

66.     Due to the demands of their workload, it was common for Plaintiffs and other Project Coordinators to work early in the morning, late in the evening, as well as on weekends. The demands of their employment also required them to work through lunch.

67.     Due to these conditions, Plaintiffs and other Project Coordinators worked well over forty (40) hours each week. Working overtime was integral to their employment. Plaintiffs and others similarly situated routinely worked approximately forty-five (45) to fifty (50) hours per week when they held the salaried exempt position of Project Coordinator.

68.     Defendant recently changed the classification of this position. In December 2020, Plaintiffs and all other Project Coordinators received a company-wide letter from Defendant's Chief Operating Officer. The letter advised that the position of Project Coordinator had been reclassified to hourly non-exempt. The letter stated what each Project Coordinator's hourly rate would be and made clear that starting in January 2021, they would all be entitled to overtime wages.[1] Project Coordinators were also told that they would be given the new title of "Program Coordinator."

69.     From approximately January 2021 to November 2021, Plaintiff Sarahong held the position of Program Coordinator.

70.     From approximately January 2021 to January 2022, Plaintiff Saether held the position of Program Coordinator.

71.     The duties attributable to the Program Coordinator and Project Coordinator positions were exactly the same. Plaintiffs have made clear that the only difference is that during the period they held the position of Project Coordinator, they were not eligible to receive overtime wages.

---

[1] Plaintiff Sarahong was advised that her hourly rate would be $19.65. Plaintiff Saether was advised that her hourly rate would be $25.00. Although the letter advised that the Project Coordinator position would thereafter be eligible for overtime pay, it stated that all overtime had to be approved by a manager. Throughout Plaintiffs' employment, it was routine for their overtime hours worked to not be approved.

72.     The duties that Plaintiffs and other Project Coordinators performed did not implicate any overtime exemptions contained within the FLSA, MWHL, the MWPCL, or the WMWA.

73.     There is no bona fide dispute that Plaintiffs and other Project Coordinators are owed overtime wages.

74.     Defendant suffered and/or permitted Plaintiffs and other Project Coordinators to work overtime regularly.

75.     Defendant was well aware of the multiple overtime hours that Plaintiffs and other Project Coordinators worked.

76.     When Plaintiffs held the position of "Project Coordinator," they submitted their time via the portal Ultipro. This is the same portal that Plaintiffs and other Project Coordinators used to track their time once they were converted to "Program Coordinators." The only difference is that when they held the salaried exempt Project Coordinator position, Plaintiffs were instructed to not record working more than eight (8) hours each day, regardless of the number of hours they actually worked.

77.     Other similarly situated Project Coordinators followed the same unlawful instructions. This was despite the fact that Defendant was well aware that Plaintiffs and others similarly situated were working far more than eight (8) hours each day.

78.     Defendant knew that Plaintiffs and other Project Coordinators consistently worked well over forty (40) hours each week.

79.     Defendant refused to pay Plaintiffs and other Project Coordinators overtime wages.

80.     For the entirety of the period they held the position of Project Coordinator, Plaintiffs and others similarly situated were not compensated at a rate of "time and a half" their regular rate of pay for the hours they worked over forty (40) each week.

81.     As a result of Defendant's illegal policy, Plaintiffs and other Project Coordinators were denied wages for multiple hours of compensable work.

82.     Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint

## FLSA COLLECTIVE ACTION ALLEGATIONS

83.     Plaintiffs and other similarly situated employees worked as Project Coordinators for Defendant. Their duties centered on maintaining documents, updating databases and performing other routine tasks related to the completion of Defendant's clients' projects.

84.     The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and other similarly situated Project Coordinators with overtime wages for all hours worked over forty (40) in a workweek.

85.     Defendant knew that Plaintiffs and other similarly situated employees did not qualify for any exemptions to the FLSA's overtime provisions.

86.     Defendant knew that Plaintiffs and other similarly situated employees typically worked over forty (40) hours per week.

87.     Defendant suffered and/or permitted Plaintiffs and other similarly situated employees to work more than forty (40) hours per week.

88.     Defendant knew that Plaintiffs and other similarly situated employees were entitled to overtime pay for all hours worked over forty (40) in a workweek.

89.     Regardless of the number of hours Plaintiffs and other similarly situated employees worked, Defendant did not pay them any additional pay for working over forty (40) hours a week.

90.     Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and all those similarly situated.

91.     Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek within the applicable statute of limitations.  Plaintiffs make these same demands on behalf of all members of the putative collective class.

92.     Plaintiffs consent to be party Plaintiffs in this matter.  Plaintiffs' consent forms are attached to this Complaint as Exhibits A and B.

93.     It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

94.     There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA and are thereby fit for membership in the collective class of similarly situated employees.

95.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

96.     These similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit as members of the collective class.

97.     Upon information and belief, other similarly situated employees will choose to join Plaintiffs in this action against Defendant and opt-in to this lawsuit to recover unpaid wages and other available relief.

**CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS**

98.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Sarahong

brings this action on behalf of herself and other current and former employees that worked as

Project Coordinators for Defendant and were subject to the following practices and policies:

99.     Denial of overtime wages under MWHL for hours worked over forty (40) in a

single workweek; and

100.    Denial of all wages owed to Plaintiff and other similarly situated Project

Coordinators at the termination of their employment, in violation of the MWPCL.

101.    The classes Plaintiff seeks to represent are defined as follows:

MWHL Class:

All individuals who are or were employed by Defendant as Project
Coordinators for any period ranging from three (3) years prior to the filing
of this instant action to the time of the reclassification, who were paid on a
salaried basis and failed to receive overtime wages at a rate of time-and-a-
half their regular rate of pay for all hours worked over forty (40) in a
workweek, in violation of MWHL.

MWPCL Class:

All individuals who were, but are no longer, employed by Defendant as
Project Coordinators for any period ranging from three (3) years prior to the
filing of this instant action to to the time of the reclassification, who were
paid on a salaried basis and failed to receive overtime wages at a rate of
time-and-a-half their regular rate of pay for all hours worked over forty (40)
in a workweek and thus did not receive all wages owed to them before the
termination of their employment with Defendant, in violation of the
MWPCL.

102.    *Numerosity:* The individuals in the classes are sufficiently numerous that joinder of

all members is impracticable.   Although the precise number of such individuals is currently

unknown, the classes could include dozens of employees who are readily identifiable through

Defendant's pay records.   Upon reasonable belief, Defendant employed dozens of Project Coordinators in the state of Maryland. Consequently, numerosity exists.

103.   *Commonality:* There are questions of law and fact common to the classes.  Among the common questions of law and fact applicable to Plaintiffs and the classes are:

a.   Whether the MWHL Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime;

b.   Whether Defendant employed the MWHL Class within the meaning of MWHL;

c.   Whether Defendant violated MWHL by failing to pay Plaintiffs and the MWHL Class overtime compensation for hours worked in excess of forty (40) hours per workweek;

d.   Whether Defendant's violations of MWHL were willful;

e.   Whether Defendant employed the MWPCL Class within the meaning of the MWPCL;

f.   Whether Defendant failed to provide Plaintiff and other members of the MWPCL Class with all wages due at the time their employment ended in violation of the MWPCL;

g.   Whether Defendant's violations of MWPCL were willful; and

h.   Whether Defendant is liable for damages claimed herein, including, but not limited to, compensatory, liquidated, treble, statutory, interest, costs and attorneys' fees.

104.   *Typicality:* Plaintiff's claims are typical of those of the classes. Specifically, each and every MWHL and MWPCL class member worked as Project Coordinators for Defendant.  Each

and every MWHL class member was required to work well over forty (40) hours per workweek to keep up with Defendant's imposed schedule. Each class member was paid a salary and failed to receive overtime wages. Every member of the MWPCL Class failed to receive all wages owed to them at the end of their employment. As a result, each and every class member suffered the same harm. This was due to Defendant's failure to pay a proper overtime premium for all hours worked in excess of forty (40) hours per workweek and the subsequent failure to pay Plaintiff and other members of the MWPCL Class all wages owed to them at the conclusion of their employment.  This constitutes a direct violation of MWHL, as well as a subsequent violation of the MWPCL.

105.    *Adequacy:* Plaintiff will fully and adequately protect the interests of the classes.  She seeks the same recovery as the classes, predicated upon the same violations of law and the same damage theory. Plaintiff has also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the classes.

106.    *Predominance:* The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one set of facts.  This is based on Defendant's failure to pay overtime as required by MWHL and its subsequent failure to pay all wages due at the end of each Project Coordinator's employment, as required by the MWPCL. Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount and frequency each class member was paid, as well as the amount of time each class member worked.

107.    This action is maintainable as a class action.  The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes. This would establish incompatible standards of

conduct for Defendant.  If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a considerable drain and burden on judicial resources.

108.    Accordingly, the Court should certify the proposed classes.

## CLASS ACTION UNDER WASHINGTON WAGE LAWS

109.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Saether brings this action on behalf of herself and other current and former employees that served as Project Coordinators for Defendant and were subject to the following unlawful practice:

110.    Denial of overtime wages under RCW § 49.46.130 for hours worked over forty (40) in a single workweek.

111.    The class Plaintiff seeks to represent is defined as follows:

WMWA Class:

All individuals who are or were employed by Defendant as Project Coordinators for any period ranging from three (3) years prior to the filing of this instant action to the time of the reclassification, who were paid on a salaried basis and failed to receive overtime wages at a rate of time-and-a-half their regular rate of pay for all hours worked over forty (40) in a workweek, in violation of the WMWA.

112.    *Numerosity:* The individuals in the class are sufficiently numerous that joinder of all members is impracticable.  Although the precise number of such individuals is currently unknown, the class could include dozens of employees who are readily identifiable through Defendant's pay records. Upon information and belief, Defendant employed dozens of Project Coordinators in the state of Washington. Consequently, numerosity exists.

113.    *Commonality:* There are questions of law and fact common to the class. Among the common questions of law and fact applicable to Plaintiff and the class are:

a.  Whether the WMWA Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime;

b.  Whether Defendant employed the WMWA Class within the meaning of the RCW;

c.  Whether Defendant violated the WMWA by failing to pay Plaintiff and the WMWA Class overtime compensation for hours worked in excess of forty (40) hours per workweek;

d.  Whether Defendant's violations of the WMWA were willful;

e.  Whether Defendant is liable for damages claimed herein, including, but not limited to, compensatory, double, statutory, interest, costs and attorneys' fees.

114.  *Typicality:* Plaintiff's claims are typical of those of the class. Specifically, each and every class member worked as Project Coordinators for Defendant. Each and every class member was required to work well over forty (40) hours per workweek to keep up with Defendant's imposed schedule. Each class member was paid a salary and failed to receive overtime wages. As a result, each and every class member suffered the same harm.

115.  *Adequacy:* Plaintiff will fully and adequately protect the interests of the class. She seeks the same recovery as the class, predicated upon the same violations of law and the same damage theory. Plaintiff has also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the class.

116.  *Predominance:* The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Washington's wage and hour statutory scheme

and one set of facts. This is based on Defendant's failure to pay overtime as required by the WMWA. Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount and frequency each class member was paid, as well as the amount of time each class member worked.

117.    This action is maintainable as a class action. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class. This would establish incompatible standards of conduct for Defendant. If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a considerable drain and burden on judicial resources.

118.    Accordingly, the Court should certify the proposed class.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Against Defendant Smartlink, LLC*

**Count I.** ***Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiffs and all Members of the Collective Class Who, During the Course of this Matter, Opt-In to the Lawsuit by Submitting their Consent Forms to Become Party-Plaintiffs***

119.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

120.    Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

121.    As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

122.     Defendant willfully and intentionally failed to compensate Plaintiffs properly for the overtime wages they are owed.

123.     There is no *bona fide* dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

124.     All members of the putative collective are similarly situated to Plaintiffs and have suffered the same and/or similar harm resulting from the same policies and practices alleged in this Complaint.

125.     Under the FLSA, Plaintiffs and all members of the collective are entitled to additional wages from Defendant to compensate them for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiffs' and each member of the collective's regular hourly wage rate.

**Count II. *Violation of MWHL: Failure to Pay Overtime Wages to Plaintiffs and All Members of the MWHL Class, to be Certified by Motion During the Course of this Matter***

126.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

127.     Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate. Furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

128.     Plaintiff Sarahong has not received proper compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

129.     Defendant willfully and intentionally did not compensate Plaintiff for the overtime wages she is owed under the MWHL.

130.    There is no *bona fide* dispute that Plaintiff is owed overtime wages under the MWHL for the work she performed for Defendant.

131.    All members of the MWHL Class are similarly situated to Plaintiff and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

132.    Under MWHL, Plaintiff and members of the MWHL Class are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiff's and each MWHL Class member's regular hourly wage rate.

**Count III.** *Violation of the MWPCL: Failure to Pay Wages Owed at the Termination of Their Employment to Plaintiffs and to All Members of the MWPCL Class, to be Certified by Motion During the Course of this Matter*

133.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

134.    Plaintiff Sarahong and the putative class are entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501, *et seq*., which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of his or her employment, on or before the day on which the employee would have otherwise been paid the wages.

135.    In accordance with §3-505(a), Plaintiff has not received compensation from Defendant for all wages owed for work performed before the termination of her employment.  This is specific to Defendant's failure to pay Plaintiff the overtime wages that she is entitled to.  Similarly, Defendant failed to pay members of the MWPCL Class the overtime wages they are entitled to.

136.     Defendant willfully and intentionally did not compensate Plaintiff or members of the MWPCL Class for the wages owed to them and continued to violate the MWPCL, even after Plaintiff informed Defendant of the violation.

137.     All members of the MWPCL Class are similarly situated to Plaintiff and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

138.     Under the MWPCL, there is no *bona fide* dispute that Plaintiff and the MWPCL Class are owed wages for work performed while employed by Defendant.

**Count IV.** *Overtime Violations under the WMWA, RCW § 49.46.130: Failure to Pay Wages Owed at the Termination of Their Employment to Plaintiffs and to All Members of the MWMA Class, to be Certified by Motion During the Course of this Matter*

139.     Plaintiffs incorporate by reference all facts and allegations in the preceding paragraphs.

140.     Plaintiff Saether and the WMWA Class were at all times relevant employees under RCW § 49.46.010(3).

141.     RCW § 49.6.130 requires employers to pay overtime compensation to all non-exempt employees, at a rate of one and one-half times their regular rate of pay for all hours over forty (40) per workweek.

142.     Defendant routinely suffered and permitted Plaintiff and members of the WMWA Class to work more than forty (40) hours per week without overtime compensation.

143.     As described above, Defendant's actions, policies and practices violate the Washington law by failing to property compensate Plaintiff and members of the WMWA Class for their overtime hours worked.

144.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the WMWA Class have suffered and will continue to suffer a loss of income and other damages.

145.     Plaintiff and the WMWA Class seek to recover attorneys' fees, costs, double damages and expenses of this action, to be paid by Defendant, as provided by RCW § 49.46.090 and other applicable state laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, pray for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b) Ordering Defendant to disclose, in computer format, the names, addresses, emails and telephone numbers of all those individuals who are similarly situated and permitting Plaintiffs to send notice of this action to all those similarly situated individuals;

c) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Maryland state law class action on behalf of Plaintiff Sarahong and all members of the proposed classes;

d) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Washington state law class action on behalf of Plaintiff Saether and all members of the proposed classes;

e) Designating the named Plaintiffs to act as class representatives on behalf of all similarly situated employees for both the FLSA collective class and the Maryland state law and Washington state law classes;

f) Judgment against Defendant for its failure to pay Plaintiffs, those similarly situated and all those appropriately joined to this matter in accordance with the standards set forth by the FLSA;

g) Judgment against Defendant for its failure to pay Plaintiff Sarahong, the members of the MWHL Class and all those appropriately joined to this matter in accordance with the standards set forth by MWHL;

h)  Judgment against Defendant for its failure to pay Plaintiff Sarahong, the members of the MWPCL Class and all those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

i)  Judgment against Defendant for its failure to pay Plaintiff Saether, the members of the WMWA Class and all those appropriately joined to this matter in accordance with the standards set forth by the WMWA.

j)  Judgment against Defendant and classifying its conduct as willful and not in good faith;

k)  Judgment against Defendant for misclassifying Plaintiffs, the collective and the classes as salaried-exempt employees not eligible for the overtime protections under the FLSA, MWHL, the MWPCL and the WMWA;

l)  An award against Defendant for the amount of unpaid overtime wages owed to Plaintiffs, members of the collective, members of the MWHL Class, members of the MWPCL Class, members of the WMWA Class and all those appropriately joined to this matter calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' and other Project Coordinators' respective regular hourly rate for all overtime hours worked;

m)  An award of liquidated/trebled damages equal to, or double/triple, the total amounts of unpaid wages owed to Plaintiffs, members of the collective, members of the classes and all those appropriately joined to this matter, whichever is deemed just and equitable by this Honorable Court;

n)  An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

o)  Leave to add additional Plaintiffs to all Counts alleged herein by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

p)  All further relief deemed just and equitable by this Honorable Court.

## **REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

*/s/ Benjamin L. Davis, III*

Benjamin L. Davis, III, Esquire (29774)
*bdavis@nicholllaw.com*
Scott E. Nevin, Esquire (22478)
*snevin@nicholllaw.com*
Kelly A. Burgy, Esquire (20758)
*kaburgy@nicholllaw.com*
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, MD 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*